IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADDICTION TREATMENT CENTERS, INC. and ST. GEORGE DETOX CENTER, LLC; <br><br>      Plaintiffs; <br><br> v. <br><br> SHADOW MOUNTAIN, LLC; ROUND HILL SERVICES, LLC; DAVID SKELTON; DAVID BRADLEY; and ROBB HOLUB; <br><br>      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT <br><br> Case No. 2:16-cv-00339-JNP-CMR <br><br> District Judge Jill N. Parrish |

Addiction Treatment Centers, Inc. and Shadow Mountain, LLC jointly owned a drug addiction treatment facility. They entered into a written contract to dissolve their partnership. They then blamed each other for breaching the contract. Addiction Treatment Centers sued Shadow Mountain, alleging a breach of contract cause of action and six other claims. Shadow Mountain countersued Addiction Treatment Centers, alleging seventeen counterclaims.

Before the court is Addiction Treatment Centers' motion for summary judgment. [Docket 63]. It argues that it should prevail as a matter of law on its breach of contract claim against Shadow Mountain. Addiction Treatment Centers also asserts that it is entitled to summary judgment on all of Shadow Mountain's counterclaims.

The court GRANTS IN PART AND DENIES IN PART the motion for summary judgment. The court denies summary judgment in favor of Addiction Treatment Centers on its breach of

contract claim. The court denies summary judgment on some of Shadow Mountain's counterclaims but grants summary judgment on others.

## BACKGROUND[1]

Shadow Mountain and Joel Hanson entered into a joint venture to open the St. George Detox Hospital, a drug treatment facility. Shadow Mountain owned 51% of the partnership and Hanson owned 49%. In September 2015, Hanson sold his interest in the treatment facility partnership to Addiction Treatment Centers.[2]

Addiction Treatment Centers began to divert payments that belonged to the St. George Detox Hospital partnership. Addiction Treatment Centers also sent invoices to patients, instructing them to pay itself rather than the partnership. Additionally, Addiction Treatment Centers claimed ownership of the lease for the treatment facility. Based upon this claimed ownership, Addiction Treatment Centers began to limit Shadow Mountain's access to the property and, at one point, had the locks changed.

On January 8, 2016, Shadow Mountain and Addiction Treatment Centers signed a letter agreement. The agreement stated that "[Shadow Mountain] and [Addiction Treatment Centers] have elected to discontinue the working relationship involving Saint George Detox Hospital . . .

---

[1] The court recites the facts in the light most favorable to the nonmoving party, Shadow Mountain.

[2] Shadow Mountain alleges that Addiction Treatment Centers never obtained a partnership interest in the St. George Detox Hospital for two reasons: (1) Hanson was bound by an oral agreement not to transfer his partnership interest without Shadow Mountain's consent and (2) the transfer was ineffective because Addiction Treatment Centers purported to obtain the partnership interest from Sane N Sober PC, a professional corporation owned by Hanson rather than from Hanson himself. Because Shadow Mountain's contention is not dispositive of the summary judgement issues before the court and because some of Shadow Mountain's arguments rest on the existence of a partnership with Addiction Treatment Centers, the court assumes for the purposes of this order that Addiction Treatment Centers obtained a valid ownership interest in the hospital partnership.

effective December 31, 2015." In paragraph 1, Shadow Mountain agreed to pay Addiction Treatment Centers "one hundred thousand dollars ($100,000) "(SM Settlement Amount) [sic] for complete settlement of any claims or disputes between [Shadow Mountain] and [Addiction Treatment Centers] regarding their working relationship, entitlement, and involvement with [the St. George Detox Hospital]."

Paragraphs 2 through 7 addressed the division of various assets and liabilities of the partnership. Paragraph 2 provided for the division of bank accounts:

> Funds in the <u>Wells Fargo</u> bank account with account number <u>8660849608</u> ("SM Bank Account") and funds in _____ bank account with account number _____ ("ATC Bank Account") shall be added together ("Total Bank Account Funds") and distributed at closing to SM and ATC. SM and ATC, each, shall receive at closing fifty percent (50%) of Total Bank Account Funds available. The amount of Total Bank Account Funds available for distribution at closing will be mutually agreed upon by SM and ATC after reviewing the appropriate SM Bank Account financial statements, to be provided by SM, and the ATC Bank Account financial statements, tobe [sic] provided by ATC.

Paragraphs 4, 5, and 6 provided for various adjustments to the SM Settlement Amount to be paid to Addiction Treatment Centers for billing and collection costs, two company cars, and the security deposit for the lease of the hospital property. Paragraph 7 provided that various intangible assets of the partnership, such as its name, logo, phone number, and website, would go to Addiction Treatment Centers. Finally, paragraph 11 provided that "[t]he final settlement amount to be paid by [Shadow Mountain] will be determined by addition to or subtraction from the SM Settlement Amount, the agreed dollar amounts for [paragraphs] 2 through 7 stated above."

Shadow Mountain and Addiction Treatment Centers did not reach an agreement as to the division of the bank accounts. Addiction Treatment Centers provided statements from an account

at Colorado Community Bank, but it did not provide supplementary documentation to explain certain debits, including a $50,000 debit on November 12, 2015. Addiction Treatment Centers also failed to provide adequate documentation for a Bank of the West account that Shadow Mountain contends should have been divided between the parties. Shadow Mountain contends that the absence of adequate documentation rendered adequate accounting impossible and the parties did not agree on a division of the bank accounts. Due to the parties' inability to come to an agreement, Shadow Mountain never made a payment to Addiction Treatment Centers, nor did it transfer the intangible assets provided for under paragraph 7. Shadow Mountain continued to operate the St. George Detox Hospital as its sole owner.

Addiction Treatment Centers and an associated business entity, St. George Detox Center, LLC, (collectively, Addiction Treatment Centers) sued Shadow Mountain; Round Hill Services, LLC; David Skelton; David Bradley; and Robb Holub (collectively, Shadow Mountain). Addiction Treatment Centers asserted seven causes of action, including a claim that Shadow Mountain breached the letter agreement by failing to make a payment required by paragraph 11 and by failing to transfer the intangible property required by paragraph 7. Shadow Mountain and Round Hill Services (collectively, Shadow Mountain) countersued Addiction Treatment Centers, St. George Detox Center, and Arlen Barksdale (collectively, Addiction Treatment Centers), alleging seventeen causes of action. Shadow Mountain's counterclaims are largely based upon allegations that Addiction Treatment Centers improperly diverted payments that belonged to the partnership and took actions that harmed the partnership.

Addiction Treatment Centers moved for summary judgment on its breach of contract claim. It argues that it should prevail as a matter of law on the liability portion of this claim, leaving for

the jury the question of damages. Addiction Treatment Centers also moved for summary judgment

on Shadow Mountain's seventeen counterclaims.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this

burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there

is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary

judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a

showing sufficient to establish the existence of an element essential to that party's case." *Celotex*,

477 U.S. at 322.

## ANALYSIS

## I.  MOTION FOR SUMMARY JUDGMENT ON ADDICTION TREATMENT CENTER'S BREACH OF CONTRACT CLAIM

Addiction Treatment Centers argues that it is entitled to summary judgment on its breach

of contract claim. It asserts that Shadow Mountain breached two provisions of the letter agreement

as a matter of law. First, Addiction Treatment Centers contends that it fully performed its

obligations under paragraph 2 of the letter agreement by providing the bank account information

necessary to allow the parties to split the money contained in the accounts. Addiction Treatment

Centers argues that because it performed its obligations under the letter agreement, Shadow

Mountain breached the agreement by failing to calculate and pay the "final settlement amount" it

owed pursuant to paragraph 11 of the agreement. *See Am. W. Bank Members, L.C. v. State*, 342

P.3d 224, 230–31 (Utah 2014) (citation omitted) ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."). Second, Addiction Treatment Centers asserts that Shadow Mountain breached paragraph 7 of the letter agreement by failing to turn over intangible assets, such as the St. George Detox Hospital's phone number and website.

### A.    Breach of the Payment Provision

Addiction Treatment Center's argument that Shadow Mountain breached paragraph 11 by failing to pay the "final settlement amount" turns on whether all of the conditions precedent to Shadow Mountain's obligations to remit payment had been satisfied. Shadow Mountain contends that Addiction Treatment Centers did not fully perform its obligation to provide documentation of the two bank accounts it controlled. It further asserts that there is evidence that Addiction Treatment Centers had withdrawn partnership funds from at least one of the bank accounts and that these funds had to be accounted for before the parties could calculate an equitable division of the money contained in the accounts. Shadow Mountain argues, therefore, that its obligation to pay the final settlement amount never arose.

The court concludes, however, that it need not decide whether Addiction Treatment Centers undisputedly provided adequate documentation to allow the parties to split the money contained in the bank accounts it controlled because another condition precedent to the division of the bank funds had not been satisfied. Paragraph 2 required the parties to mutually agree upon the division of the accounts before the funds were to be distributed:

> The amount of Total Bank Account Funds available for distribution at closing will be mutually agreed upon by [Shadow Mountain] and [Addiction Treatment Centers] after reviewing the appropriate [Shadow Mountain] Bank Account financial statements, to be provided by [Shadow Mountain], and the [Addiction Treatment

> Centers] Bank Account financial statements, to be provided by
> [Addiction Treatment Centers].

In other words, Shadow Mountain and Addiction Treatment Centers entered into a prototypical "agreement to agree" on the precise division of the bank accounts at a future date. Paragraph 11 further emphasized that an agreement on the division of the bank accounts was required before Shadow Mountain had to pay the final settlement amount: "[t]he final settlement amount to be paid by [Shadow Mountain] will be determined by addition to or subtraction from the SM Settlement Amount, the *agreed dollar amounts* for [paragraphs] 2 through 7 stated above." (Emphasis added).

It is undisputed that the parties did not come to a mutual agreement regarding the division of the bank accounts controlled by Addiction Treatment Centers. Because the parties did not agree to the division of the bank accounts, the final settlement amount could not be calculated and Shadow Mountain's obligation to remit the final settlement amount never ripened. The court, therefore, denies Addiction Treatment Center's motion for summary judgment on its claim that Shadow Mountain breached its payment obligation under paragraph 11 of the letter agreement.

B.    *Breach of the Intangible Assets Provision*

Addiction Treatment Centers also argues that Shadow Mountain breached paragraph 7 as a matter of law. This provision states: "Any other items and/or assets[] included in this settlement will be listed in <u>Exhibit B – Miscellaneous Items</u> as a part of this Letter Agreement." Exhibit B provided that the ownership of the following listed items would vest in Addiction Treatment Centers after the Date of Settlement: "Name," "Logo," Phone-844 web," "Ring Central," and "Web." Addiction Treatment Centers argues that Shadow Mountain breached paragraph 7 by failing to facilitate the transfer of the telephone numbers and internet domain name associated with St. George Detox Hospital.

7

Addiction Treatment Centers, however, is not entitled to summary judgment on this claim because it has not shown that paragraph 7 is severable from the payment provision of the letter agreement. "In Utah, contract provisions are severable if the parties intended severance at the time they entered into the contract and if the primary purpose of the contract could still be accomplished following severance." *Sosa v. Paulos*, 924 P.2d 357, 363 (Utah 1996). Addiction Treatment Centers has not provided any evidence that the parties intended the obligations under paragraph 7 to be independently enforceable. The letter agreement does not contain a severability clause. Indeed, the letter agreement intertwines the payment provision with the intangible property transfer provision, indicating that the parties did not intend these provisions to be severable. Exhibit B states that Addiction Treatment Center's ownership of the listed property would commence "after Date of Settlement." Date of Settlement is a defined term in the letter agreement: "Date of settlement ('Date of Settlement') on which [Shadow Mountain] shall pay Final Settlement Amount to [Addiction Treatment Centers] and consummate this Letter Agreement is January 11, 2016." Thus, both the payment to be calculated under paragraph 11 and the transfer of intangible assets under paragraph 7 were to be completed contemporaneously, indicating that these provisions are not severable.

As noted above, the paragraph 11 payment provision fails because the parties did not agree on the division of the bank accounts. Because the paragraph 7 intangible asset provision is not severable, Addiction Treatment Centers cannot independently enforce it. Accordingly, Addiction Treatment Centers in not entitled to summary judgment in its favor on its claim for breach of this provision.

## II.    MOTION FOR SUMMARY JUDGMENT ON SHADOW MOUNTAIN'S COUNTERCLAIMS

Shadow Mountain originally pled seventeen counterclaims against Addiction Treatment Centers. In its response to Addiction Treatment Center's motion for summary judgment, Shadow Mountain has withdrawn four of those counterclaims. The thirteen counterclaims that remain are: (1) conversion, (2) breach of contract, (3) breach of the covenant of good faith and fair dealing under the letter agreement, (4) unjust enrichment, (5) intentional interference with existing economic relations, (6) intentional interference with potential economic relations, (7) fraudulent nondisclosure against Barksdale, (8) fraudulent nondisclosure against Addiction Treatment Centers, (9) violation of the Lanham Act, (10) unfair competition, (11) breach of fiduciary duty, (12) breach of duty of loyalty, and (13) breach of the duty of good faith and fair dealing under the partnership agreement.

Addiction Treatment Centers first argues that all of the counterclaims should be disallowed because Shadow Mountain failed to adequately disclose its damages calculations. Second, Addiction Treatment Centers argues that each of the counterclaims fails as a matter of law. The court addresses each of these arguments below.

### A.  *Discovery Sanctions*

Addiction Treatment Centers argues that Shadow Mountain failed to comply with Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure, which requires the disclosure of damages calculations for each category of damages sought. Addiction Treatment Centers requests that this court sanction Shadow Mountain for this omission by excluding all evidence of damages. Because Shadow Mountain cannot prevail on its counterclaims without evidence of damages, Addiction Treatment Centers effectively requests terminating sanctions for Shadow Mountain's

9

counterclaims. The court will first address the sufficiency of Shadow Mountain's damages calculations and then analyze whether any inadequacies warrant the exclusion of all evidence of damages.

        1)  Sufficiency

Rule 26(a)(1)(A)(iii) requires the parties to disclose "without awaiting a discovery request . . . a computation of each category of damages claimed by the disclosing party." In its initial disclosure on its counterclaims, Shadow Mountain provided only cursory allegations regarding its claimed damages. For its conversion counterclaim, for example, it claimed "damages in excess of $203,000." For its breach of contract and breach of the covenant of good faith claims Shadow Mountain calculated "damages against ATC in an amount not less than $75,000 and consequential damages of approximately $100,000." For all of the remaining counterclaims still at issue in this case, Shadow Mountain merely claims entitlement to "damages . . . in an amount not less than $75,000."

These disclosures are not sufficient to comply with Rule 26(a)(1)(A)(iii), which requires "a 'computation,' supported by documents." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006). The plain language of Rule 26 requires "more than a lump sum statement of the damages allegedly sustained." *City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003). The term computation "contemplates some analysis; for instance, in a claim for lost wages, there should be some information relating to hours worked and pay rate." *Id.* Shadow Mountain, at best, provided a dollar figure as an estimate of approximate damages. For the vast majority of its counterclaims, Shadow Mountain stated only that it was entitled to at least $75,000 in damages. Addiction Treatment Centers could only guess as to what Shadow Mountain calculated its actual damages to be. In short, Shadow Mountain merely provided the bare-bones

allegations of damages that may be found in a complaint. This does not qualify as a calculation that would satisfy Shadow Mountain's discovery obligations under Rule 26.

2)   Substantially Justified or Harmless

Pursuant to Rule 37(c)(1), a party that violates Rule 26 by failing to disclose certain information is precluded from using that information in motions or at trial, unless the failure to disclose was "substantially justified or is harmless." "[T]he determination of whether a Rule 26(a) . . . violation is justified or harmless is entrusted to the broad discretion of the district court." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017) (first alteration in original) (citation omitted). In considering whether to exclude a damages calculation under Rule 37(c)(1), courts must consider four mandatory factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* (citation omitted).

If the exclusion of a damages calculation effectively terminates a cause of action, as is the case here, courts must consider an additional factor. The Tenth Circuit has "described dismissal as 'an extreme sanction,' appropriate '[o]nly when the aggravating factors [like bad faith or willfulness] outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Id.* at 1204 (alterations in original) (citation omitted). Thus, dismissal as a sanction under Rule 37(c)(1) should "'be used as a weapon of last, rather than first, resort,' because 'a lesser sanction will [often] deter the errant party from further [discovery] misconduct.'" *Id.* (alterations in original) (citation omitted). Accordingly, "district courts should consider the efficacy of lesser sanctions, where the exclusion of evidence has the necessary force and effect of a dismissal." *Id.* at 1205.

In summary, a court must "set forth the reasoning for exercising its discretion to exclude evidence" under Rule 37(c)(1). *Id.* at 1203. A failure to sufficiently explain its consideration of the four mandatory exclusion factors or to consider the efficacy of a lessor sanction is an abuse of discretion and reversable error. *Id.* at 1203, 1205–06.

In this case, Addiction Treatment Centers did not address any of the factors this court must consider before entering a de facto terminating sanction under Rule 37(c)(1). Shadow Mountain briefly argues that it will be prejudiced if Shadow Mountain is permitted to present evidence of damages because discovery was conducted without the benefit of adequate damages calculations. But no trial date has been set and, as noted in Part III of this order, the court has extended time for discovery. Thus, there is no prejudice caused by Shadow Mountain's failure to provide adequate damage calculations. Moreover, Addition Treatment Centers fails to acknowledge or weigh the four mandatory factors, address the disfavored nature of dismissal as a sanction, or argue that a lessor sanction would be ineffective. Indeed, there is no reason to believe that if Addiction Treatment Centers had raised this issue in a timely manner, rather than lying in wait until summary judgment, lessor sanctions would not have resulted in compliance with Rule 26(a)(1)(A)(iii) during discovery.

Because Addiction Treatment Centers has failed to address the mandatory factors for exclusion or the efficacy of a lessor sanction, the court is unable to conduct an analysis that will survive appellate review. Accordingly, Addiction Treatment Center's request to dismiss Shadow Mountain's counterclaims as a discovery sanction is denied.

### B.   *Summary Judgment on Shadow Mountain's Counterclaims*

Addiction Treatment Centers argues that it is entitled to summary judgment on Shadow Mountain's counterclaims because the undisputed evidence shows that it must prevail as a matter

of law. Addiction Treatment Centers also asserts that the court should not consider either a declaration or two other documents provided by Shadow Mountain in determining whether summary judgment is merited. The court first addresses Addiction Treatment Center's contentions regarding the evidence that this court may consider. It then turns to the arguments on each of the counterclaims.

1)  Exclusion of Evidence

Addiction Treatment Centers first argues that the sham affidavit rule prohibits the court from considering a declaration provided by Shadow Mountain's principle, Holub. But Addiction Treatment Centers does not rely on the traditional version of the sham affidavit rule—"that an affidavit that contradicts earlier deposition testimony should not be considered." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1223 n.2 (10th Cir. 2000). Instead, Addiction Treatment Centers cites a somewhat more expansive version of this rule embraced in a dissenting opinion, which states that an affidavit should also be rejected if it does not "explain why the affiant did not mention the matter at an earlier time when one would fully expect it to have been mentioned." *Genberg v. Porter*, 882 F.3d 1249, 1263 (10th Cir. 2018) (Hartz, J., concurring and dissenting).

The court rejects Addiction Treatment Center's sham affidavit argument. The rule it cites is not the law of the Tenth Circuit. Indeed, the majority opinion in *Genberg* disagreed with the dissent's articulation of the sham affidavit rule. *Id.* at 1256 n.3 (majority opinion). Moreover, even if the rule cited by Addiction Treatment Centers were the law, it makes no attempt to apply it to this case. Addiction Treatment Centers does not explain what the earlier opportunity to mention the information in Holub's affidavit would have been. Thus, the court will not strike any portion of the Holub declaration as a sham affidavit.

13

Addiction Treatment Centers also argues that the court should not consider two documents attached as exhibits to Shadow Mountain's response to the motion for summary judgement: (1) a one-page list of checks allegedly diverted by Addiction Treatment Centers and (2) a one-page financial statement for the St. George Detox Hospital partnership. Addiction Treatment Centers asserts that these documents should be stricken because "it appears" that they were not produced in discovery. But the court need not rule on this issue because neither of these documents is essential to Shadow Mountain's opposition to summary judgment. The court, therefore, declines to address at this time Addiction Treatment Center's argument that these documents should be excluded.

    2)  Conversion

Shadow Mountain alleges that Addiction Treatment Centers is liable for conversion because it appropriated for itself payments that belonged to the St. George Detox Hospital partnership. "A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991) (citation omitted). "Essential to the doctrine of conversion is that the plaintiff have title or possession of the item allegedly converted." *Benton v. State, Div. of State Lands & Forestry, Dep't of Nat. Res.*, 709 P.2d 362, 365 (Utah 1985). Addiction Treatment Centers argues that it is entitled to summary judgment on the conversion counterclaim for two reasons.

First, Addiction Treatment Centers asserts that it did not wrongfully convert the payments because it held an ownership interest in the St. George Detox Hospital partnership. In essence, Addiction Treatment Centers argues that a partner cannot be liable for conversion of partnership assets. But it cites no caselaw for this proposition. The fact that Addiction Treatment Centers may

have been a part owner of the St. George Detox Hospital partnership does not mean that it could not convert property that belonged to the partnership. The court, therefore, rejects Addiction Treatment Center's argument that it is immune from liability for conversion.

Second, Addiction Treatment Centers argues that the undisputed evidence shows that it did not convert assets belonging to the St. George Detox Hospital partnership. In support of this argument, it points to the declaration of its principle, Barksdale, who avers that Addiction Treatment Centers did not divert any checks and that a third party collected all payments and disclosed the funds collected to the partners. But the Holub declaration contradicts the Barksdale declaration. Holub declares that Addiction Treatment Centers diverted payments. This declaration, along with the documents attached thereto, are sufficient to create a dispute of material fact on the issue of conversion that precludes summary judgment.

3) Breach of Contract

Shadow Mountain alleges that Addiction Treatment Centers breached paragraph 2 of the letter agreement because it did not provide adequate financial statements for the bank accounts that it controlled. Shadow Mountain asserts that because of this lack of documentation, the parties were unable to agree upon a fair distribution of the money contained in the bank accounts. Shadow Mountain further argues that it was damaged by the breach. Although the letter agreement required Shadow Mountain to pay $100,000 to Addiction Treatment Centers, paragraphs 2 and 11 of the agreement required the parties to adjust this amount based upon the division of the bank accounts. Shadow Mountain contends that that it has evidence showing that a proper division of the bank accounts would result in an adjustment in its favor of more than $100,000. In other words, Shadow Mountain asserts that the terms of the letter agreement would require Addiction Treatment Centers to pay it money after the adjustments were calculated.

15

In support of this argument, Shadow Mountain cites the Holub declaration. This declaration states that Addiction Treatment Centers withdrew $50,000 from a bank account it controlled before the money in the account could be divided. Holub also declared that Addiction Treatment Centers had billed clients for services when the payment should have been remitted to the partnership. Finally, Holub asserted that Addiction Treatment Centers diverted and cashed checks that belonged to the partnership. Adding these three categories together, Holub stated that Addiction Treatment Centers diverted at least $200,536 from the partnership. Apparently relying upon this figure, Shadow Mountain argues that the money owed by Addiction Treatment Centers more than offsets the $100,000 it owes under paragraph 1 of the letter agreement.

Addiction Treatment Centers argues that it is entitled to summary judgment on Shadow Mountain's breach of contract counterclaim because it has no evidence of damages caused by any breach of the letter agreement. The court agrees because Shadow Mountain's theory of damages is fatally flawed. Addiction Treatment Centers did not have a contractual obligation to compensate Shadow Mountain for checks or payments that it may have diverted from the partnership. Addiction Treatment Centers was obliged by the letter agreement only to provide records related to certain bank accounts it controlled and to make a good faith attempt to come to a mutual agreement regarding an equitable division of the money from the bank accounts. *See Utah Golf Ass'n, Inc. v. City of N. Salt Lake*, 79 P.3d 919, 921 (Utah 2003) (holding that a contract provision obligating a party to enter into a long term lease "upon such terms and conditions agreed upon between the parties" required only good faith efforts to negotiate the terms of the lease). At most, Shadow Mountain has produced evidence of $50,000 withdrawn from a bank account that should have been accounted for and split between the parties. Even taking into consideration the various adjustments in paragraphs 4, 5, and 6 of the letter agreement to the $100,000 payment, a $25,000

16

adjustment is not enough to tip the scales to the point that Addiction Treatment Centers would be required to pay money to Shadow Mountain. Thus, Shadow Mountain has not produced any evidence of damages caused by Addiction Treatment Centers' alleged breach of the letter agreement. Accordingly, the court grants summary judgment in favor of Addiction Treatment Centers on the breach of contract counterclaim.

4)   Breach of the Covenant of Good Faith and Fair Dealing

"Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008) (citation omitted). The "core function" of the covenant of good faith and fair dealing is to prevent "another's opportunistic interference with the contract's fulfillment." *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 817 (Utah 2011). This core function "protects commercial reliance interests" by implying terms "that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute." *Id.* at 816–17.

Shadow Mountain alleges two separate counterclaims for breach of the implied covenant of good faith and fair dealing. It first asserts that Addiction Treatment Centers breached the implied covenant attendant to the letter agreement by failing to account for and split the funds that it diverted from the hospital partnership. Shadow Mountain also contends that Addiction Treatment Centers breached the implied covenant attendant to the oral partnership agreement. Shadow Mountain appears to assert that Addiction Treatment Centers bound itself to the terms of the oral partnership agreement when it bought out Hanson's interest in the partnership. Shadow Mountain alleges somewhat vaguely that that Addiction Treatment Centers "took actions to destroy or injure Shadow Mountain's right to receive the benefits of the partnership agreement."

17

Addiction Treatment Centers argues that that the court should grant summary judgment on Shadow Mountain's first counterclaim for breach of the covenant of good faith and fair dealing because it "took no actions inconsistent with the [letter agreement] before or after Shadow Mountain's breach." The court disagrees. Shadow Mountain contends that the letter agreement contains an implied promise to account for and return the funds that Addiction Treatment Centers allegedly diverted from their partnership. Shadow Mountain has produced evidence to support its allegation regarding the diverted funds through the Holub declaration and attached documents. Thus, there is a dispute of material fact as to whether Addiction Treatment Centers breached this purported implied promise.

Addiction Treatment Centers also argues in one sentence that this claim should be barred as a sanction because Shadow Mountain did not respond to a request for documents reflecting its damages. Addiction Treatment Centers provides no evidence for this claim, nor does it cite or discuss any caselaw. Bereft of any facts or law upon which the court may evaluate this argument, it is inadequately briefed. The court therefore declines to address Addiction Treatment Centers' discovery sanction argument. *See, e.g., Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995) (declining to consider the merits of an argument due to inadequate briefing); *Sheedy v. BSB Properties, LC*, No. 2:13-CV-00290-JNP, 2016 WL 6902513, at *5 (D. Utah Mar. 1, 2016) (denying cross motions for summary judgment due to "inadequate briefing on the relevant legal issues and the insufficient factual support provided therein.").

Addiction Treatment Centers also argues that it is entitled to summary judgment on the second counterclaim for breach of the covenant of good faith and fair dealing based upon the alleged partnership agreement. It asserts that "Barksdale denies taking any actions that would not have been in good faith under the terms of the partnership agreement." But the Holub declaration

18

avers that Addiction Treatment Centers did commit a number of acts that harmed the partnership, creating a dispute of material fact that prevents the court from granting summary judgment.

The court, therefore, denies summary judgment on both of Shadow Mountain's counterclaims for breach of the covenant of good faith and fair dealing.

> 5) Unjust Enrichment

Shadow Mountain asserts a counterclaim for unjust enrichment, arguing that it provided a benefit to Addiction Treatment Centers in the form of payments it diverted. Addiction Treatment Centers argues that it is entitled to summary judgment on this counterclaim because even if Shadow Mountain's allegations were true, it did not confer a benefit on Addiction Treatment Centers. The court agrees.

Unjust enrichment has three elements: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Jeffs v. Stubbs*, 970 P.2d 1234, 1248 (Utah 1998) (citation omitted). Accepting the evidence of diverted payments as true, Shadow Mountain never conferred a benefit on Addiction Treatment Centers. Indeed, it is Shadow Mountain's contention that it was unaware of the diverted payments. Unjust enrichment cannot be used to recover assets stolen from the plaintiff. It permits the recovery of benefits voluntarily conferred. Because Shadow Mountain did not produce evidence that it conveyed a benefit to Addiction Treatment Centers, it cannot satisfy the first element of an unjust enrichment claim. Accordingly, the court grants summary judgment on this counterclaim.

6) Intentional Interference with Economic Relations

Shadow Mountain alleges a counterclaim for intentional interference with existing economic relations and a separate counterclaim for intentional interference with potential economic relations. Shadow Mountain asserts that Addiction Treatment Centers is liable because it diverted payments and clients away from the partnership and because it denied access to the partnership facilities.

Citing the Barksdale declaration, Addiction Treatment Centers argues that the court should grant summary judgment on these two counterclaims because Shadow mountain's allegations are not true. But the Holub declaration creates a dispute of material fact as to whether Addiction Treatment Centers diverted payments or clients from the partnership. The court, therefore, denies summary judgment on the counterclaims for interference with economic relations.

7) Fraudulent Nondisclosure

Shadow Mountain alleges two counterclaims for fraudulent nondisclosure: one against Barksdale and one against Addiction Treatment Centers. Shadow Mountain contends that they are liable for fraudulent nondisclosure because they failed to disclose that they were diverting payments from the partnership. Citing the Barksdale declaration, Addiction Treatment Centers and Barksdale argue that the court should grant summary judgment on these counterclaims because Shadow Mountain knew that they had "at times, deposited checks to the Detox Hospital in bank accounts controlled by" Addiction Treatment Centers. Once again, however, summary judgment is not appropriate because the Holub declaration asserts that Shadow Mountain did not become aware of the diverted checks until much later, creating a dispute of material fact. The court, therefore, denies summary judgment on the two fraudulent nondisclosure counterclaims.

20

8)  Violations of the Lanham Act

Shadow Mountain asserts a counterclaim under the Lanham Act. "There are two distinct bases for liability under [the Lanham Act]: (1) false representation in advertising concerning the qualities of goods [or services] (false advertising claims); and (2) false representations concerning the origin or endorsement of goods [or services] (false association or product infringement claims)." *Hutchinson v. Pfeil*, 211 F.3d 515, 520 (10th Cir. 2000) (citation omitted). Shadow Mountain alleges a false association counterclaim, claiming that Addiction Treatment Centers misrepresented the origin of the St. George Detox Hospital's services by (1) excluding Shadow Mountain from the facility for a period of time and (2) submitting its own bills for services provided by the partnership.

Addiction Treatment Centers argues for summary judgment on this counterclaim because it never offered drug treatment services in competition with Shadow Mountain. The court agrees that summary judgment is warranted. The evidence cited by the parties does not state whether any services were provided during the period of time when Shadow Mountain was locked out of the facility by Addiction Treatment Centers. But assuming that services were provided, they were provided by the St. George Detox Hospital partnership. There is no evidence that Addiction Treatment Centers designated these services as being provided by an entity other than the partnership. Moreover, directing insurance companies and patients to pay Addiction Treatment Centers rather than the hospital partnership is not a misrepresentation regarding the origin of the drug treatment services provided to the patient. It would be a misrepresentation regarding the entity that should be paid for the services.

In short, Shadow Mountain does not point to any evidence that Addiction Treatment Centers misled consumers by palming off its drug treatment services as being provided by Shadow

21

Mountain. Indeed, there is no evidence that Addiction Treatment Centers provided drug treatment services in competition with Shadow Mountain or the hospital partnership. Accordingly, the court grants summary judgment on Shadow Mountain's Lanham Act counterclaim.

        9)  Unfair Competition

Shadow Mountain asserts a common law counterclaim for unfair competition. "Unfair competition . . . consists in one person imitating by some device or designation the wares made and sold by another for the purpose of palming off or substituting his wares for those of the other, and in that way misleading the purchaser by inducing him to buy the wares made and sold by the first instead of those by the second." *Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 863 (Utah 2008) (citation omitted). Similar to its argument against the Lanham Act counterclaim, Shadow Mountain asserts that Addiction Treatment Centers is liable for unfair competition because it passed off the hospital partnership's services as its own by submitting its own bills for those services.

For the same reasons that the court grants summary judgment on the Lanham Act counterclaim, the court grants summary judgment on the unfair competition counterclaim. There is no evidence that Addiction Treatment Centers tried to mislead consumers regarding the source of the treatment services provided. The Holub declaration alleges that Addiction Treatment Centers deceived customers as to whom they should pay for the addiction treatment services. The declaration does not state that Addiction Treatment Centers misled customers regarding the identity of the entity providing the services.

        10) Breach of Fiduciary Duty and Breach of the Duty of Loyalty

Shadow Mountain asserts a counterclaim for breach of fiduciary duty and separate counterclaim for breach of the duty of loyalty. In essence, Shadow Mountain contends that

Addiction Treatment Centers breached the duties it owed as a partner in the St. George Detox Hospital venture by diverting payments from the partnership. Addiction Treatment Centers argues that it cannot be liable because the Barksdale declaration states that it did not misappropriate partnership property. But the Holub declaration asserts that Addiction Treatment Centers did divert payments, creating a dispute of material fact. Accordingly, the court denies summary judgment on these two counterclaims.

### 11) Withdrawn Counterclaims

Shadow Mountain also asserts counterclaims for violations of the Utah Sales Practices Act, injurious falsehood, commercial defamation, and civil conspiracy. Addiction Treatment Centers moved for summary judgment on these counterclaims. In response, Shadow Mountain sated that it intended to withdraw these counterclaims. The court deems these counterclaims to be abandoned and grants summary judgment in favor of Addiction Treatment Centers.

## III.   REOPENING DISCOVERY

The court notes that, unfortunately, both lead counsel for Addiction Treatment Centers and lead counsel for Shadow Mountain passed away during the pendency of this case. At oral argument on this motion for summary judgment, current counsel for both parties acknowledged that this has led to confusion as to what discovery and disclosures have been made and has contributed to the overall lack of discovery in this case. Indeed, it appears that no depositions have been taken. Both parties indicated that this litigation could benefit from additional discovery.

The court, therefore, reopens discovery in this case. The parties shall have 30 days from the date of this Order to serve updated damage computations and to update their initial disclosures. The discovery cutoff shall be 120 days from the date of this order. The court does not anticipate granting a motion to continue the new discovery cutoff date and will not entertain additional

23

dispositive motions. The court shall hold a scheduling conference on October 1, 2020 at 1:30 p.m. to set a trial date.

## CONCLUSION AND ORDER

For the reasons stated above, the court rules as follows:

1) The court DENIES Addiction Treatment Centers' motion for summary judgment in its favor on its breach of contract claim.

2) The court GRANTS summary judgment on the following counterclaims asserted by Shadow Mountain: (1) the second counterclaim for breach of contract, (2) the fourth counterclaim for unjust enrichment, (3) the ninth counterclaim for violations of the Lanham Act, (4) the tenth counterclaim for violations of the Utah Sales Practices Act, (5) the eleventh counterclaim for unfair competition, (6) the twelfth counterclaim for injurious falsehood, (7) the thirteenth counterclaim for commercial defamation, and (8) the fourteenth counterclaim for civil conspiracy.

3) The court DENIES summary judgment on the following counterclaims asserted by Shadow Mountain: (1) the first counterclaim for conversion, (2) the third counterclaim for breach of the covenant of good faith and fair dealing associated with the letter agreement, (3) the fifth counterclaim for intentional interference with existing economic relations, (4) the sixth counterclaim for intentional interference with potential economic relations, (5) the seventh counterclaim for fraudulent nondisclosure against Barksdale, (6) the eighth counterclaim for fraudulent nondisclosure against Addiction Treatment Centers, (7) the fifteenth counterclaim for breach of fiduciary duty, (8) the sixteenth counterclaim for breach of the duty of loyalty, and (9) the seventeenth counterclaim for breach of the covenant of good faith and fair dealing

24

associated with the partnership agreement. These counterclaims, along with the claims asserted by Addiction Treatment Centers, remain to be resolved at trial.

4) The court reopens discovery. The parties shall have 30 days from the date of this Order to serve updated damage computations and to update their initial disclosures. The discovery cutoff shall be 120 days from the date of this order. The court shall hold a scheduling conference on October 1, 2020 at 1:30 p.m. to set a trial date.

DATED May 19, 2020.

BY THE COURT

Jill N. Parrish
United States District Court Judge

25